

CLERK, U.S. DISTRICT COURT
RECEIVED
AUG 1 1 2003
EASTERN DISTRICT OF TEXAS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **SCOTT O'GRADY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 502CV173** |
| | § | |
| **TWENTIETH CENTURY FOX** | § | **JURY DEMANDED** |
| **FILM CORPORATION, and** | § | |
| **DISCOVERY COMMUNICATIONS,** | § | **ORAL ARGUMENT REQUESTED** |
| **INC.,** | § | |
| | § | |
| **Defendants** | § | |

**DEFENDANT TWENTIETH CENTURY FOX FILM CORPORATION'S**
**REPLY BRIEF TO PLAINTIFF SCOTT O'GRADY'S RESPONSE TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

Defendant Twentieth Century Fox Film Corporation ("Fox Film") files this its Reply[1] to Plaintiff Scott O'Grady's (hereafter "Plaintiff" or "O'Grady") Response to Defendants' Motions for Summary Judgment ("Response") and in support thereof would show the following:

## I. INTRODUCTION

Plaintiff's 75 page Response reveals that he has abandoned significant parts of his case. After complaining that "Fox never obtained...[Plaintiff's] permission to produce its movie entitled "BEHIND ENEMY LINES," which was based on [Plaintiff's] story" [First Amended Complaint ("FAC") at ¶ 33], Plaintiff now concedes that "this case is not about...Fox's right to make the movie "BEHIND ENEMY LINES" (Resp. at 1).

---

[1] We also incorporate by reference the arguments and authorities submitted in the Reply Brief of co-defendant Discovery Communications, Inc.

Accordingly, Fox Film's grounds for summary judgment numbers one through three and eight through ten which relate to Plaintiff's claims of misappropriation and Lanham Act violation as to the Movie are uncontested and should be granted. *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir. 1992) (Non-movant must respond to each challenged element and claim). In addition, Plaintiff "hereby dismisses his tortious interference claim." (Resp. at 71). Therefore, Fox Film's motion for summary judgment grounds sixteen through nineteen should be granted. *See Exxon Corp. v. Maryland Cas. Co.*, 599 F.2d 659, 662 n.10 (5th Cir. 1979).

The Response fails to controvert virtually all of the undisputed facts advanced by Defendants and to the extent Plaintiff purports to create a disputed issue they are all either **illusory,**[2] **immaterial**[3] or **conclusory.**[4] None of the facts addressed in Appendix Two raise a genuine issue of material fact sufficient to defeat summary judgment as we show below. We chart the controverted and uncontroverted facts in Fox Film's Appendix A.

Plaintiff's case now focuses exclusively on advertisements of the Movie aired in conjunction with the November 28 DCI Documentary and the material inserted by DCI into and around that broadcast ("The Challenged Material"). Plaintiff has no claims for two independent reasons: (i) the Challenged Material is not actionable because it is related to a literary work concededly protected by the First Amendment. *See Lane v. Random House*,

---

[2] i.e., Defendants assert that O'Grady was paid $500 for the BBC documentary (Fox Film Statement of Undisputed Facts Section G. 1 at p. 18). Plaintiff attempts to controvert this by noting only that O'Grady "directed the $500 cash payment to a charity of his choosing." (Resp. Appendix Two at p. 1 ¶ 3)
[3] i.e., "Fox Film implies that the script was completed and presented to John Moore in September 1999." (Resp. Appendix Two at p. 1 ¶ 2) Assuming there is such an implication, it doesn't matter when Moore received the final script especially since the Movie is in evidence and now it appears that "O'Grady does not challenge Fox's right to make a fictionalized movie inspired by O'Grady and his life story." (Resp. at 29, n. 5)
[4] i.e., "Fox Film contends that the interstitials were not 'advertisements for the movie.' Plaintiff controverts this assertion and contends...[the purpose was to advertise the Movie]." (Resp. Appendix Two at p. 3 ¶ 8) The Interstitials are in evidence. (Ex. 335). It is the content of the speech, not its characterization, that is determinative of whether or not the Interstitials are commercial or noncommercial speech protected under the First Amendment. *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 423, n.18, 113 S.Ct. 1505, 1513 (1993).

-2-

985 F. Supp. 141, 146 (D.D.C. 1995) ("Because [Plaintiff's] picture and quotation are newsworthy and incidentally related to a protected speech product, they cannot form the basis for a successful misappropriation claim."), and (ii) it is undisputed that the Challenged Material does not expressly assert that Plaintiff endorses or was involved with the Movie and therefore liability is precluded. *Rogers v. Grimaldi*, 875 F.2d 994, 1001 (2nd Cir. 1989) ("The [Challenged Material] contains no explicit indication that [Plaintiff] endorsed the film or had a role in producing it. The survey evidence, even if its validity is assumed, indicates at most that some members of the public would draw the incorrect inference .... But the risk of misunderstanding, not engendered by any **overt** claim in [the Challenged Material] is so outweighed by the interests in artistic expression as to preclude application of the Lanham Act." (emphasis added)).

## II. ARGUMENT AND AUTHORITIES

The Response does not address Fox Film's Summary Judgment grounds for Invasion of Privacy by Misappropriation as to The Movie (FAC Count I ¶¶ 45-49), Lanham Act Claims As To The Movie (FAC – Count II ¶¶ 50-52) or Tortious Interference (FAC – Count IV ¶ 57-58)[5]. Because Plaintiff has failed to respond to the aforementioned grounds Fox Film is entitled to summary judgment as a matter of law on the First Amendment and other defenses addressed in its Motion for Summary Judgment as to the Movie. *See Topalian, supra.* Plaintiff also concedes that the DCI Documentary is protected by the First Amendment. (Resp. at 1.)

---

[5] Although Plaintiff attempts to dismiss the tortious interference claim in its Response at VII, the "dismissal" is not done pursuant to FED. R. CIV. P. Rules 15 and 41 and, therefore, is ineffective to avoid summary judgment. *See Exxon Corp. v. Maryland Casualty Co.*, 599 F.2d 659, 662 n.10.

It is no longer disputed, if it ever was, that the Movie and the DCI Documentary are protected works under the First Amendment. Plaintiff also concedes that "the First Amendment allows the publisher to tell consumers about the content of the [underlying protected work]." (Resp. at II.D at 37 (citing *Groden v. Random House*, 61 F.3d 1045, 1052 (2nd Cir. 1995); *Lane*, 985 F.Supp. at 152)). Yet, Plaintiff's complaint now is that Defendants' juxtaposition of these First Amendment protected works on November 28th morphed the protected speech into false and misleading commercial speech. As Plaintiff articulates this issue: "this is a case about two stand-alone work's (DCI's docu-drama and Fox's promotional materials for its movie) being intentionally intertwined to deliver a commercial message, to encourage viewers to purchase tickets for [the Movie]." (Resp. at 33). Plaintiff has cited no authority which would support liability under this novel theory. Indeed, there is none.

Plaintiff attempts to avoid summary judgment by distancing himself from the Fifth Circuit's seminal decision in *Matthews v. Wozencraft*, 15 F.3d 432 (5th Cir. 1994) by now claiming that the Movie is not at issue (Resp. at 1) and further by attempting to impeach his own deposition, pleadings and summary judgment evidence by arguing that the Movie had "nothing to do with Scott O'Grady"[6] (Resp. at 1). This remarkable claim is advanced even though he testified that: "as far as the making of the movie, it is definitely based off my story and my experience ... the essence that the movie was made off of an American fighter pilot ... shot down in Bosnia and rescued ... the premise for making the movie was based off

---

[6] Plaintiff repeatedly misrepresents the deposition testimony of Michelle Marks, a Fox Film employee in the promotions department, which stated " A. That Fox's movie 'Behind Enemy Lines has nothing to do with *'The Scott O'Grady Story.'* Q. Has nothing to do with *'The Scott O'Grady Story.'* You told Kelly Patterson that? A. That is correct." (Plf's Ex. 13 at 49:9-20) attached to Response. The line of questions was about "the same story as the Discovery Channel program" *(i.e. "Behind Enemy Lines: The Scott O'Grady Story")* not whether the Movie had anything to do with Scott O'Grady himself. (*Id.* at 49:9-20). Indeed, the Movie made absolutely no use of any dialogue or visual images from the DCI Documentary itself. *See* Exs. 335 and 4.

my experience") (OG Vol. 1 at 48:03-49:10). Plaintiff's First Amended Complaint alleges that "Fox based its film on Captain O'Grady's story..." (FAC ¶ 29 at p. 8). His Response offers in evidence a letter authored by Fox Film's Beth Luterman dated March 6, 2002 which states in part, that "the film was based upon your unbelievable true story and heroics..." (Pl. Ex. 25 attached to the Response). He further offers as evidence the transcript of an interview with the Movie's producer, John Davis, which says, in part: "The Movie started with an idea, um, when Scott O'Grady was shot down over Bosnia. The idea occurred to us that we could make a movie that dealt with an American pilot, who is down behind enemy lines, where there were terrific obstacles in going and being able to bring him out. And that this pilot had to survive on his wit and, and, and cunning and just shear determination to survive." (Pl. Ex. 71 attached to the Response).

Having taken the position that the Movie was based on him in his Complaint (FAC at ¶ 29, ¶ 30) his deposition testimony, and in documents he relies upon before this Court, Plaintiff now attempts to raise a genuine issue of material fact by stating in his Response that "it is undisputed that [the Movie] is not O'Grady's story." (Resp. at 6).[7] Plaintiff's attempts, however, are futile because a party cannot even create a sham issue of fact by submitting an affidavit that contradicts the position they adopted/or statements made in prior deposition testimony, let alone by contradicting his pleadings and testimony via argument of counsel. For example, in *Doe v. Dallas Independent School Dist.*, the Fifth Circuit stated:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

---

[7] Legal memoranda and argument of counsel are not evidence and they cannot by themselves create a factual dispute to defeat a summary judgment motion. FED.R.CIV.P. 56(c); *White v. Hearst Corp.*, 669 F.2d 14, 18 (1st Cir. 1982 and cases cited therein).

220 F.3d 380, 386 (5th Cir. 2000), *cert. denied*, 531 U.S. 1073 (2001) (quoting *Perma Research and Dev. Co. v.* Singer *Co.*, 410 F.2d 572, 578 (2d Cir. 1969))(citations omitted); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.").

Indeed, the undisputed fact remains that the Movie, the DCI Documentary and the Challenged Material are all related to the public figure Scott O'Grady, and were inspired by his experience in Bosnia - information that was in the public domain. Moreover, throughout the Response, Plaintiff admits that the Movie was at least inspired by his experience. For these reasons, all of the material is protected under the First Amendment and liability will not attach, even in fictionalized form. *See Wozencraft,* 15 F.3d at 440.

A.    **EXPLICIT OR EXPRESS ENDORSEMENT V. IMPLIED ENDORSEMENT (IN REPLY TO PLAINTIFF'S RESPONSE AT PAGES 31-34 AND 56-59) AND THE LANHAM ACT.**

Plaintiff concedes, as he must, that Fox Film never used his name or likeness in any advertisement for the Movie (Pl. Ex. 2 at pp. 3-4 ¶ 9 to the Response citing Plaintiff's deposition testimony) and that there is no statement in the Challenged Material which expressly states that Plaintiff endorses the Movie or participated in its development. Rather, he claims that "[t]he November 28 Rebroadcast delivered a false **'implied** endorsement' message to consumers." (Resp. at 56). (emphasis added) The Response argues that "the *Rogers* test does not apply," citing *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir.

2001) (Resp. at 34 and 55) which did not involve First Amendment protected works, but instead was a catalogue advertising clothing.

In *Rogers, supra*, the Second Circuit held that an express endorsement was required for First Amendment protected works, rejecting the implied endorsement theory relied upon by Plaintiff. *Rogers* was adopted by the Fifth Circuit in *Westchester Media v. PRL Holdings, Inc.*, 214 F.3d 658, 664-65 (5th Cir. 2000) ([First Amendment works] "require more ... protection than ordinary commercial products.") and has been followed by many other Circuits. *See e.g., ETW Corporation v. Jireh Publishing, Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) ("Rogers is the best test for balancing Defendants' and the public's interest in free expression under the First Amendment against [Plaintiff's] and the public's interest in enforcement of the Lanham Act." (citing *Parks v. LaFace Records*, 329 F.3d 437, 451-52 (6th Cir. 2003)).

The cases relied upon by Plaintiff for the proposition that Rogers does not apply and that the Lanham Act and state law claims permit an implied endorsement all deal with commercial products, not First Amendment protected works or activities. *See BBB v. Medical Directors, Inc.*, 681 F.2d 397 (5th Cir. 1982) (weight loss centers); *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407 (9th Cir. 1996) (cars) and *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992) (snack food).

The conceded failure to demonstrate an explicit or express statement of endorsement is fatal to Plaintiff's remaining claims in this case which is grounded on protected First Amendment activity. *See* 4 McCarthy on Trademarks and Unfair Competition, ¶28:15 at 28-23 (2003) ("the risk of public confusion caused by an implicit false endorsement was held to be outweighed by the First Amendment danger of restricting news gathering and

-7-

dissemination") (citing *New Kids on the Block v. News America Publishing, Inc.*, 745 F. Supp. 1540 (C.D. Cal 1990), *aff'd on other grounds*, 971 F.2d 302 (9th Cir. 1992)).

**B.     THE CHALLENGED MATERIAL IS RELATED TO FIRST AMENDMENT PROTECTED WORKS AND THEREFORE NOT ACTIONABLE (IN REPLY TO RESPONSE AT PAGES 28-34).**

Relying on the three factors set forth in *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983), Plaintiff contends that the November 28 DCI Documentary is a single work of commercial speech created to advertise the Movie in order to encourage viewers interested in war movies to purchase tickets for the Movie. (Resp. at 30-31).

Plaintiff's simplistic analysis, however, ignores the *Bolger* Court's caution in applying such an analysis where there is a "closer question" and, more importantly, the Court's recognition that "[o]f course, a different conclusion may be appropriate in a case where the pamphlet advertises an activity protected by the First Amendment." *Id.* at 67 n. 14 (citing *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870 (1943)). [T]he core notion of commercial speech is that it does no more than propose a commercial transaction." *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001) citing *Bolger*. Thus, **it is the content of the speech** which determines whether particular speech is commercial, not merely the economic motive of the speaker. *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 423, n.18, 113 S.Ct. 1505 (1993); *Board of Trustees of the State Univ. Of New York v. Fox*, 492 U.S. 469, 482, 109 S.Ct. 3028 (1989).

Moreover, Defendants' economic motive (Resp. at 25-26, 31, 45) is a non-factor where, as here, the Challenged Material is related to and advertises activities protected by the First Amendment: that is; the DCI Documentary and the Movie. *See New York Times v.*

*Sullivan*, 376 U.S. 254, 266, (1964) ("[I]f the allegedly libelous statements would otherwise be constitutionally protected. . . they do not forfeit that protection because they were published in the form of a paid advertisement."); *Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761, 96 S.Ct. 1817, 1825 (1976)("[S]peech does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or another."); *Buckley v. Valeo*, 424 U.S. 1, 35-59, 96 S.Ct. 612 (1976); *Smith v. California*361 U.S. 147, 150, 80 S.Ct. 215 (1959).

Plaintiff also contends that because the Movie and the DCI Documentary both started as "separate standalone works" they cannot be "inextricably intertwined." (Resp. at 33) Plaintiff misconstrues Fox Film's argument.

If, under Plaintiff's new theory, the November 28 DCI Documentary constitutes a single work (Resp. at 30), the components of that work consist of the DCI Documentary, the Interstitials, openings, tune-ins and commercials for the Movie. *Id.* It is undisputed that the Movie emanates from and is related to O'Grady's experience in Bosnia when he was shot down behind enemy lines. (FAC at ¶ 29 -¶ 30). Likewise, it is conceded that the DCI Documentary is protected First Amendment speech. The commercials for the Movie and the DCI Documentary are also protected speech because, although commercials, they advertise protected speech. *See Bolger*, 463 U.S. at 67 n.14. If the Plaintiff's theory were accurate, he would have a claim against the Kia Car Company, Kay Jewelers, Sears and the Discovery Channel program: Pearl Harbor – Death of the Arizona, all of which advertised on the program and all of which had "nothing to do with Scott O'Grady." (*See* Ex. 335 (Jt. App. V, DVD 3, Track 1)).

As Plaintiff illustrates in the Response, the tune-ins, opening and Interstitials advise the viewer of the DCI Documentary and the upcoming release of the Movie. (Resp. at 21-24) Additionally, the November 28 DCI Documentary contains footage of interview clips of O'Grady, President Clinton, and sets up the contrast between fact and fiction between the Movie and the DCI Documentary by stating "but before you cross the lines in theatres – find out how America responded to the real thing" followed by footage and clips of O'Grady and President Clinton: it also asks questions, such as "in the case of Scott O'Grady, one major challenge came in finding food for survival - just how safe are tree leaves, bugs, and rain water (showing shots of O'Grady eating leaves)? The nutritional facts when we return to 'Behind Enemy Lines - The Scott O'Grady Story.'" (Resp. at 21-24). The November 28 DCI Documentary's content is educational, editorial, expressive speech that simply does not fit into the commercial speech paradigm; i.e. it does not pass the test enunciated by the Supreme Court in *Fox* that the test for commercial speech is a "proposal for a commercial transaction." *Fox*, 492 U.S. at 473-74; *Hoffman v. Capital Cities/ABC, Inc.,* 255 F.3d 1180 (9th Cir. 2001).

In *Hoffman*, the Court analyzed a magazine's use of a computer-generated image of an actor which falsely depicted him wearing fashion designer's women's clothes. The Ninth Circuit reversed a judgment in favor of the Plaintiff holding the magazine was not pure commercial speech and thus was entitled to full First Amendment protection, defeating all Plaintiff's state law right of publicity, unfair competition and Lanham Act claims. The Court noted that the magazine did not use Hoffman's image in a traditional advertisement printed merely for the purpose of selling a particular product. *Hoffman*, 255 F.3d at 1185. The Court continued:

> "Nor did the article simply advance a commercial message...viewed in context, the article as a whole is a combination of fashion photography, humor and visual and verbal editorial comment on classic films and famous actors. Any commercial aspects are 'inextricably intertwined' with expressive elements, and so they cannot be separated out from the whole...There are common sense differences between speech that does no more than propose a commercial transaction and other varieties, and common sense tells us this is not a simple advertisement.

*Hoffman*, 255 F.3d at 1185-86. (citation omitted). The Court also held that the admitted purpose of the article to "attract attention" did not strip it of its First Amendment protection.

Assuming without admitting that the November 28 DCI Documentary contains commercial and non-commercial component parts, under Plaintiff's theory they are part of a single speech, and thus are "inextricably intertwined." This Court cannot parcel out commercial speech applying one test to one phrase and another test to another phrase. *Id.; Riley v. National Federation of the Blind of North Carolina, Inc.,* 487 U.S. 781, 796, 108 S. Ct. 2667 (1988) Rather, the Court must apply the test for fully protected speech. *Id.* It is in this context that the inextricably intertwined speech doctrine is applied by Fox Film. Consequently, the November 28 DCI Documentary is all fully protected and Plaintiff's claims fail as a matter of law.

## C.    PLAINTIFF'S CASES ARE NOT ON POINT: REPLY TO RESPONSE AT PAGES 38-53.

As Plaintiff acknowledges, the key to determining whether a particular advertisement is entitled to full First Amendment protection is found in the relationship between the advertisement and the underlying work. (Resp. at 35). Plaintiff's contention that "the present

case is similar to *Downing* and *Tellado*," however, is wrong. (Resp. at 40). In *Downing*, the retail store Abercrombie used 30-year-old photographs of the plaintiff surfer in its catalogue with a surfing theme to promote its clothing. *Downing*, 265 F.3d at 1002. Unlike Plaintiff, the surfers were not public figures who held "many news conferences and interviews" (FAC at ¶ 17 p.5) and who "were a household name." (*Id.* at ¶ 15 p.4). The plaintiffs, themselves, were not the inspiration for the Abercrombie clothing catalogue. Although the *Downing* Court noted that surfing was a matter of public interest, the fact that plaintiffs were surfers, without more, was too tenuous a connection. *Downing* 265 F.3d at 1002. Moreover, in contrast to this case, the underlying product in *Downing* was a catalogue selling t-shirts, not a movie or documentary, which are First Amendment protected works.

*Tellado v. Time-Life Books, Inc.*, 643 F.Supp. 904 (D. N.J. 1986) is likewise distinguishable because there the only connection between the soldier/plaintiff and the book was the fact that he was a soldier in Vietnam. Unlike Plaintiff, the soldier's individual experience: (1) did not form the basis and inspiration of the underlying work; (2) was not the subject of vast media attention; (3) was not well documented in the public domain; (4) and did not make him a public figure. Here, it is undisputed that Plaintiff's experience was a newsworthy event and that the Movie's parallel's to his experience were public knowledge. (OG Depo. Vol. 1 at 29:2-30:13) Thus, the Plaintiff's own testimony establishes that the relationship between Plaintiff and the Movie is anything but "tenuous." Under *Wozencraft*, even if fictionalized, the Movie is protected First Amendment speech. *Wozencraft*, 15 F.3d at 438 n.5. Accordingly, Plaintiff's reliance on *Tellado* and *Downing* is misplaced.

Plaintiff's reliance on the portion of *Seale v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa. 1996) opinion regarding the sale of the music CD (Resp. at 38-39) is also

-12-

misplaced. In *Seale*, the Court distinguished the permissible use of Seale's name and likeness to promote the movie, video and history book to the music on the CD stating "[c]learly, the use of the Plaintiff's name and likeness on the ***cover of the musical CD/cassette does not relate to the content of the CD/cassette*** ... the musical CD/cassette is merely a collection of different songs performed by different musicians, ***which songs have no direct connection to the Plaintiff or the history of the Black Panther Party.***" *Id.* at 340 (emphasis added). Here, unlike the musical CD/cassette in *Seale*, the clothing catalogue in *Downing* and the photograph of the soldier in *Tellado*, Plaintiff cannot now credibly take the position that his experience in Bosnia is not related to the subject matter of the Movie when the Response admits that it was loosely based and inspired by him and which plaintiff admits contains several similarities.

Plaintiff's argument that his case is similar to the above cases because "O'Grady does not appear in the movie, O'Grady is not a character in the movie, and the movie is not about O'Grady's actual experiences" (Resp. at 40) is disingenuous. As mentioned earlier, Plaintiff cannot create a fact issue by submitting a Response stating that the Movie is not about his actual experience which contradicts his earlier deposition testimony that the Movie was "based off my experience." (OG Depo. Vol. 1 at 173:12-15). Finally, *Kimbrough v. Coca Cola/USA*, 521 S.W.2d 719 (Tex. App. Eastland 1975, writ ref'd n.r.e) (Resp. at 53) involved an Aggie football player who consented to his portrait being painted. Thereafter, the portrait was used as a part of a Coca-Cola advertisement included in a football program. *Id.* at 723. He had no connection to the product[8] which was not a First Amendment protected work.

---

[8] The Court can take judicial notice of the well known fact that the A&M players prefer Pepsi.

-13-

As the Court noted in *Lane*, "the critical question is whether the promotional material **relates to** a speech product that is itself protected." *Lane*, 985 F.Supp. at 152 (emphasis added). Here, to paraphrase *Lane*, "the [Challenged Material] is not about laundry detergent; it cannot be divorced from [the Movie, the DCI Documentary]" both of which are protected speech. Moreover, O'Grady's well publicized experience in Bosnia is the seminal source of the material for both.

## D.    THE SURVEY EVIDENCE FAILS TO RAISE A FACT ISSUE IN REPLY TO RESPONSE AT 41, 58, 63.

Plaintiff contends that a survey by Mr. Gelb (hereafter the "Gelb Survey") confirms that viewers were likely to receive a false message sufficient to raise a genuine issue of material fact. [Resp. at IV A.1 at 58, 63]

Assuming arguendo, without admitting, that the Gelb Survey is valid and indicates that some members of the public would draw the incorrect inference that O'Grady had some involvement with the film, absent an explicit statement of sponsorship, the First Amendment interest in protecting artistic expression precludes application of the Lanham Act. *Rogers*, 875 F.2d at 1001; *New Kids on the Block*, 745 F.Supp. at 1545 (granting summary judgment finding "the Lanham Act does not apply unless the defendants falsely and explicitly represented that New Kids sponsored or endorsed the O'Grady sponsored or endorsed the defendants' services: "[t]he risk that some people might think that the New Kids implicitly endorsed or sponsored the Star Magazine's and USA Today's 900 number services is outweighed by the danger of restricting news gathering and dissemination.").

As discussed previously, a movie and the commercial advertisements thereto will be protected unless it has "no artistic relevance" to the work or, if there is artistic relevance, the

-14-

work "explicitly misleads, as to the source or the content of the work." *Rogers*, 875 F.2d at

999; *Westchester Media*, 214 F.3d at 664-65; *Seale*, 949 F.Supp. at 339.

As established by Fox Film, the Challenged Material is artistic expression protected

by the First Amendment and does not contain an explicit false representation that Plaintiff

endorsed the Movie or that the Movie is Plaintiff's "real life story." Consequently, the Gelb

Survey and its results are immaterial. The Second Circuit addressed this very issue in

*Rogers* when it held:

> ... "Ginger and Fred" contains no explicit indication that Rogers endorsed
> the film or had a role in producing it. The survey, evidence, even if its
> validity is assumed, indicates at most that some members of the public would
> draw the incorrect inference that Rogers had some involvement in the film.
> **But that risk of misunderstanding, not engendered by any overt claim in
> the title, is so outweighed by the interests in artistic expression as to
> preclude application of The Lanham Act.** We therefore hold that the
> sponsorship and endorsement aspects of Rogers' Lanham Act claim raise no
> "genuine" issue that requires submission to the jury.

*Rogers*, 875 F.2d at 1001 (emphasis added).

Alternatively, the mere presentation of a survey purporting to show confusion does

not itself create a triable issue of fact. *Mattel, Inc. v. MCA Records, Inc.*, 28 F.Supp.2d 1120,

1133 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002). As explained in Fox Film's

Objections to Plaintiff's Summary Judgment Evidence ("Fox Film's Objections" see ¶ 1;

Exhibit 5), the Gelb Survey fails to meet the evidentiary standards of FED. R. CIV. EVID. 702,

and should be excluded because (1) it did not use a control group; (2) it used leading

questions; and (3) it did not test the relevant population. (*See* Fox Film's Objections at ¶1;

Ex. 5 incorporated herein by reference). Accordingly, the Gelb Survey is unreliable, should

be excluded, and does not create a genuine issue of material fact even if admissible.

E.     THE "INCIDENTAL USE" DEFENSE IN REPLY TO RESPONSE
AT 38, 45)

The erroneous but recurring theme in Plaintiff's brief is that while Plaintiff's
experience may have inspired the Movie, that connection is too tenuous.  Plaintiff's
characterization of *Groden, Lane,* and *Page v. Something Weird Video*, 960 F. Supp. 1438
(C.D. Cal. 1996) as holding that incidental use occurs when "discussion of the contents of an
expressive work in an advertisement is a necessary incident or adjunct to the expressive
works" is misleading and incorrect.  (Resp. at Section II. D at 37-38)  Moreover, Plaintiff's
characterization of *Groden, Lane* and *Page* as standing for the proposition that the plaintiff's
name or picture must appear in the underlying work before the incidental use privilege
applies is also incorrect.  (Resp. at 38).

In *Lane,* Lane argued that Random House exploited his individuality by portraying
him in an advertisement for commercial gain.  Like Plaintiff, "Lane alleged, his identity and
likeness were misappropriated to promote a book **not about him personally,** but about
conspiracy arguments in which he has been involved as a disputant." *Lane*, 985 F.Supp. at
146.  The court summarily disposed of his argument as "without merit" stating:

> **Because Lane's picture and quotation are newsworthy and incidentally
> related to a protected speech product,** they cannot form the basis for a
> successful misappropriation claim.  Random House may invoke either the
> newsworthiness privilege or the incidental use privilege.

*Id.* at 146 (emphasis added).

While Lane contended that even if the underlying book is deemed newsworthy, the
advertisement is entitled to a lesser degree of protection, the court disagreed, holding:

> While the newsworthiness privilege may not apply to an advertisement for a
> non-speech product, it does apply to advertisements for speech products—
> even those that propose a commercial transaction. Lane's theories about a

-16-

> pivotal and baffling public issue are manifestly newsworthy; serious analyses
> of his theories are derivatively newsworthy; and an advertisement promoting
> the sale of a book containing such analyses retains a newsworthiness
> immunity against a claim of misappropriation.

*Id.* at 147.

The Court in *Lane* also discussed an unauthorized use of author Ayn Rand's name in a promotion of a book by another writer. "The advertisement suggested that Rand would have approved of the ideas presented in the new book. But the court concluded that a comparison to another author is, of necessity, always newsworthy and of interest to the public, wherein must consider whether or not to purchase a book." *Lane*, 985 F. Supp. at 146 (citing *Rand v. Hearst Corp.*, 298 N.Y.S. 2d 405, 412 (Sup.Ct. 1969), *aff'd* 26 N.Y.2d 806 (1970)).

*Lane* is directly on point with Plaintiff's claims here. It is undisputed that Plaintiff's experience in Bosnia was a newsworthy event and that his experience in Bosnia is at least "incidentally related to" the Movie. (OG Depo. Vol. I 24:2-30:13). Because the Movie was based on historical and newsworthy events, including Plaintiff's experience, the advertisements and promotions for the Movie, including the Challenged Material in the November 28 DCI Documentary are accorded the newsworthy and incidental use privilege.

### III. CONCLUSION

The focus of this case has significantly narrowed. The remaining claims relating to the November 28 DCI Documentary should be dismissed for the reasons stated in Fox Film's Motion for Summary Judgment. Plaintiff has raised no genuine issue of material fact and has not cited a single case which supports his novel theory.

Respectfully submitted,

**JACKSON WALKER L.L.P.**

By: _____
Charles L. Babcock
State Bar No. 01479500
Nancy W. Hamilton
State Bar No. 11587925
Cedric D. Scott
State Bar No. 24013474
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4200
(713) 752-4221 – Fax

George L. McWilliams
PATTON, HALTOM, ROBERTS,
   MCWILLIAMS, & GREER, LLP
2900 St. Michael Drive, 4th Floor
Texarkana, Texas 75503
(903) 334-7000
(903) 334-7007 – Fax

**ATTORNEYS FOR DEFENDANT
TWENTIETH CENTURY FOX FILM
CORPORATION**

-18-

## CERTIFICATE OF SERVICE

This is to certify that on this ___11th___ day of August, 2003, a true and correct copy of the foregoing Defendant Twentieth Century Fox Film Corporation's Reply Brief to Plaintiff Scott O'Grady's Response to Defendants' Motions for Summary Judgment was served via United States Mail, postage prepaid, upon:

George E. Bowles
Locke, Liddell & Sapp. L.L.P.
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201

G. William Lavender
Lavender Law
Landmark Building
210 N. State Line, Suite 503
Texarkana, Texas 71854

Laura R. Handman
Davis Wright Tremaine L.L.P.
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272

Victor Hlavinka
Atchley, Russell, Waldrop & Hlavinka
P.O. Box 5517
Texarkana, TX 75505-5517

Charles L. Babcock

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT AND AUTHORITIES.......................................................................... 3

    A.   EXPLICIT OR EXPRESS ENDORSEMENT V. IMPLIED ENDORSEMENT
(IN REPLY TO PLAINTIFF'S RESPONSE AT PAGES 31-34 AND 56-59) AND
THE LANHAM ACT................................................................................................ 6

    B.   THE CHALLENGED MATERIAL IS RELATED TO FIRST AMENDMENT
PROTECTED WORKS AND THEREFORE NOT ACTIONABLE (IN REPLY TO
RESPONSE AT PAGES 28-34). ............................................................................... 8

    C.   PLAINTIFF'S CASES ARE NOT ON POINT: REPLY TO RESPONSE AT
PAGES 38-53................................................................................................................ 11

    D.   THE SURVEY EVIDENCE FAILS TO RAISE A FACT ISSUE IN REPLY TO
RESPONSE AT 41, 58, 63. ....................................................................................... 14

    E.   THE "INCIDENTAL USE" DEFENSE IN REPLY TO RESPONSE at 38, 45). 16

III. CONCLUSION ........................................................................................................... 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407 (9th Cir. 1996) ..........................................7

*BBB v. Medical Directors, Inc.*, 681 F.2d 397 (5th Cir. 1982) ......................................................7

*Board of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469 ....................................10

*Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983).................................................8, 9

*Buckley v. Valeo*, 424 U.S. 1 (1976)..............................................................................................9

*Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993)...............................................2, 8

*Doe v. Dallas Indep. School Dist.*, 220 F.3d 380 (5th Cir. 2000), *cert. denied*, 531 U.S.
1073 (2001) ..............................................................................................................................6

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001) ........................................6, 12

*ETW Corporation v. Jireh Publishing, Inc.*, 332 F.3d 915 (6th Cir. 2003) ..................................7

*Exxon Corp. v. Maryland Casualty Co.*, 599 F.2d 659 (5th Cir. 1979)...........................................3

*Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001) ....................................10, 11

*Lane v. Random House, Inc.*, 985 F. Supp. 141 (D.D.C. 1995)....................................2, 13, 16, 17

*Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120 (C.D. Cal. 1998), *aff'd*, 296 F.3d
894 (9th Cir. 2002)....................................................................................................................15

*Matthews v. Wozencraft*, 15 F.3d 432 (5th Cir. 1994)...........................................................6, 12

*New Kids on the Block v. News America Publishing, Inc.*, 745 F. Supp. 1540 (C.D. Cal
1990), *aff'd on other grounds*, 971 F.2d 302 (9th Cir. 1992) ......................................8, 14

*New York Times v. Sullivan*, 376 U.S. 254 (1964) ........................................................................8

*Page v. Something Weird Video*, 960 F. Supp. 1438 (C.D. Cal. 1996) .......................................16

*Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003) ...............................................................7

*Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781 (1988) ............11

*Rogers v. Grimaldi*, 875 F.2d 994 (2nd Cir. 1989).............................................................. 3, 14, 15

*S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996)..................................................... 6

*Seale v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa. 1996)............................................. 12, 14

*Smith v. California* 361 U.S. 147 (1959) ..................................................................................... 9

*Tellado v. Time-Life Books, Inc.*, 643 F. Supp. 904 (D. N.J. 1986) ............................................. 12

*Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir. 1992) .................................................................... 2, 3

*Virginia State Board Of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S.
748 (1976)..................................................................................................................................... 9

*Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992)............................................................... 7

*Westchester Media v. PRL Holdings, Inc.*, 214 F.3d 658 (5th Cir. 2000) ............................... 7, 14

*White v. Hearst Corp.*, 669 F.2d 14 (1st Cir. 1982) ...................................................................... 5

## STATE CASES

*Kimbrough v. Coca Cola/USA*, 521 S.W.2d 719 (Tex. App. Eastland 1975, writ ref'd
n.r.e) (Resp. at 53)........................................................................................................................ 13

## FEDERAL STATUTES

Fed. R. Civ. P. 56(c) ....................................................................................................................... 5

Fed. R. Civ. P. Rules 15 .................................................................................................................. 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| SCOTT O'GRADY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 502CV173 |
| | § | |
| TWENTIETH CENTURY FOX | § | JURY DEMANDED |
| FILM CORPORATION, and | § | |
| DISCOVERY COMMUNICATIONS, | § | ORAL ARGUMENT REQUESTED |
| INC., | § | |
| | § | |
| Defendants | § | |

**APPENDIX A TO DEFENDANT TWENTIETH CENTURY FOX FILM
CORPORATION'S REPLY BRIEF TO PLAINTIFF SCOTT O'GRADY'S RESPONSE
TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**CONTROVERTED AND UNCONTROVERTED FACTS**

| Fox Film's Uncontested Facts | O'Grady's Response | Fox Film's Rejoinder |
|---|---|---|
| A1 | Uncontroverted | |
| A2 | Uncontroverted | |
| A3 | Uncontroverted | |
| A4 | Uncontroverted | |
| A5 | Uncontroverted | |
| A6 | Uncontroverted | |
| B1 | Uncontroverted | |
| B2 | Uncontroverted | |
| B3 | Uncontroverted | |
| B4 | Uncontroverted | |
| B5 | Uncontroverted | |
| B6 | Uncontroverted | |
| B7 | Uncontroverted | |

| B8 | Uncontroverted | |
|----|----------------|---|
| B9 | Uncontroverted | |
| B10 | Uncontroverted | |
| C1 | Uncontroverted | |
| C2 | Uncontroverted | |
| D1 | Uncontroverted | |
| D2 | Uncontroverted | |
| D3 | Uncontroverted | |
| E1 | Uncontroverted | |
| E2 | Uncontroverted | |
| E3 | Contest that John Davis "conceived" the script contending he "conceived the idea for the movie based on O'Grady's experience…" | Immaterial |
| E4 | Uncontroverted | |
| E5 | Uncontroverted | |
| E6 | Uncontroverted | |
| E7 | Uncontroverted | |
| E8 | Uncontroverted | |
| E9 | Uncontroverted | |
| E10 | Uncontroverted | |
| F1 | Uncontroverted | |
| F2 | Uncontroverted | |
| F3 | Uncontroverted | |
| F4 | Uncontroverted | |
| F5 | Complains that Fox Film "implies the script was complete…in 1999" and contends that "movie continued to be revised and edited as late as October 29, 2001…" | Immaterial |
| F6 | Uncontroverted | |
| F7 | Uncontroverted | |
| F8 | Uncontroverted | |

| F9 | Uncontroverted | |
| F10 | Uncontroverted | |
| F11 | Uncontroverted | |
| F12 | Uncontroverted | |
| G1 | The $500 O'Grady was paid by the BBC was directed "to a charity of his choosing" | Immaterial |
| G2 | Uncontroverted | |
| G3 | Uncontroverted | |
| G4 | Contest that the document O'Grady signed with the BBC as a "Release" but rather that it was entitled "Contract" and "speaks for itself". | Immaterial |
| G5 | Contest that the document O'Grady signed with the BBC as a "Release" but rather that it was entitled "Contract" and "speaks for itself". | Immaterial |
| G6 | Contest that the document O'Grady signed with the BBC as a "Release" but rather that it was entitled "Contract" and "speaks for itself". | Immaterial |
| G7 | Contest that the document O'Grady signed with the BBC as a "Release" but rather that it was entitled "Contract" and "speaks for itself". | Immaterial |
| G8 | Contest that the document O'Grady signed with the BBC as a "Release" but rather that it was entitled "Contract" and "speaks for itself". | Immaterial |
| G9 | Contest that the document O'Grady signed with the BBC as a "Release" but rather that it was entitled "Contract" and "speaks for itself". | Immaterial |
| H1 | Controverts that Fox Film would pay to advertise the movie on the Discovery Channel during the airing of the DCI Documentary because "the purpose was to advertise and promote the movie through the newly created interstitials | Not supported by Plaintiff's record cites. Immaterial. |

| | | |
|---|---|---|
| | and other material created by DCI with Fox Film's approval. | |
| H2 | Uncontroverted | |
| H3 | Plaintiff contests the assertion that the interstitials were intended to support the fact v. fiction theme. Plaintiff says the "principle purpose" was to create the impression that the Fox Film movie was Scott O'Grady's story. | Not supported by record cites. See also objections to Gelb. Immaterial |
| H4 | Contests that the tune-ins were created to promote the DCI documentary. Plaintiff says the tune-ins were to encourage viewers to see the movie. | Not supported by record cites. Immaterial. |
| H5 | Claims the "primary purpose of the interstitials and tune-ins was to advertise and promote Fox Film's movie. | Not supported by record cites. Immaterial. |
| H6 | Uncontroverted | |
| H7 | Claims the "primary purpose of the interstitials and tune-ins was to advertise and promote Fox Film's movie. | Not supported by record cites. Immaterial. |
| H8 | Uncontroverted | |
| I1 | Uncontroverted | |
| I2 | Claims O'Grady's testimony was mischaracterized and quotes the same language Fox Film quoted and relied upon. Adds a sentence without record cite or attribution. | No conflict. Argument of counsel cannot create a fact issue. |
| I3 | Uncontroverted | |
| I4 | Claims Fox Film's entire $400,000 media buy with DCI was "part and parcel" of the November 28 program. | Not supported by record cites. Immaterial. |
| J1 | Uncontroverted | |
| J2 | Uncontroverted | |
| J3 | Uncontroverted | |
| J4 | Uncontroverted | |

| J5 | Denies that O'Grady ever endorsed "Behind Enemy Lines as "his movie". | Immaterial. The record cite is referring to "Black Hawk Down" not "Behind Enemy Lines" |
|----|----|----|
| J6 | Denies that O'Grady ever endorsed "Behind Enemy Lines as "his movie". | Immaterial. The record cite is referring to "Black Hawk Down" not "Behind Enemy Lines" |
| J7 | Uncontroverted | |
| J8 | Uncontroverted | |
| J9 | Uncontroverted | |
| J10 | Uncontroverted | |

- 5 -

3423009v1