IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| SCOTT O'GRADY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 502CV173 |
| | § | |
| TWENTIETH CENTURY FOX | § | JURY DEMANDED |
| FILM CORPORATION, and | § | |
| DISCOVERY COMMUNICATIONS, | § | ORAL ARGUMENT REQUESTED |
| INC., | § | |
| | § | |
| Defendants | § | |

### DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE GABRIEL GELB

Defendants offer this their Reply to Plaintiff's Response In Opposition to Motion to Exclude Gabriel Gelb.

1. **"The Proper Survey Universe" (Reply to Response pgs. 4-7)**. Plaintiff contends that Gelb sampled the "proper universe" (Response at 4-6) and that it "fairly tracks" the demographics of male viewers (Response at 6-7). The make up of the "proper universe" however, is not left to the vagary of the expert but instead has been defined by the Fifth Circuit cases cited by Plaintiff (see Response at 7) as follows:

> One of the most important factors in assessing the validity of an opinion poll is the adequacy of the survey universe, that is, the persons interviewed must adequately represent the opinions which are relevant to the litigation.[1]
>
> The appropriate universe should include a fair sampling of those purchasers most likely to partake in the alleged infringer's goods and services.[2]

---

[1] *Amstar v. Domino's Pizza*, 615 F.2d 252, 264 (5th Cir. 1980)
[2] *Exxon Corp. v. Texas Motor Exchange of Houston*, 628 F.2d 500, 507 (5th Cir. 1980); *Pebble Beach v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1548 (S.D.Tex.1996)("[I]t was proper… to survey **actual customers** of Tour 18 in order to gauge any confusing effect…, a universe including those golfers is appropriate.)

-1-

3447022v1

> The survey should sample an adequate or proper universe of respondents. That is, the **persons interviewed must adequately represent the opinions that are relevant to the litigation. . .the district court should exclude the survey where the sample is clearly not representative of the universe it is intended to reflect.**[3]

Thus, it is the "target" market that creates the "proper universe" for a survey. *Id.* Here, the "target" viewing audience for the November 28th Broadcast is undisputed. As Plaintiff conceded "Indeed, the goal of the November 28 Rebroadcast was to reach the demographic group of 18-49 year old males (who are likely to be interested in war movies) to encourage them to purchase tickets for *Behind Enemy Lines.*"[4] Consequently, this audience was the type of viewer that would "most likely partake" in watching the subject documentary and would buy tickets to the Fox Movie.[5] Those are the persons whose opinions are relevant to this litigation *not* persons who merely "had access to the Discovery Channel in the year 2001," (Response at 4) as surveyed by Gelb.

Here, as in *Amstar*, where the Court rejected a survey because of an improper universe, the Gelb survey has "neglected completely the defendant's primary customers."[6] Thus, it is "substantially defective" and does not present "any meaningful evidence of likelihood of confusion." *Id.*

2. **Nonprobability Sampling (Reply to Response at 9-11).** Plaintiff's reference to the Federal Judicial Center's Reference Manual on Scientific Evidence for the proposition that "nonprobability sampling is used widely…by major American companies in making decisions of

---

[3] *Harold's Store, Inc. v. Dillard's Department Stores*, 82 F.3d 1533, 1545-46 (5th Cir. 1996)(survey of college women held to "represent the opinions which are relevant to the litigation" where the subject department store was located on the college campus and the store intentionally locates stores near college campuses "to target the college market, primarily undergraduate women.")(emphasis added).
[4] Plaintiff's Opposition to Defendants' Motions for Summary Judgment at 31, incorporated herein by reference.
[5] *See e.g. Exxon Corp*, 628 F.2d at 507.
[6] *Amstar*, 615 F.2d at 263-64

considerable consequence" (Response at 10) stops short of the salient point in the very next sentence which sates:

> Nonetheless, when respondents are not selected randomly from the relevant population, the expert should be prepared to justify the method used to select respondents. **Special precautions are required to reduce the likelihood of biased samples.** In addition, quantitative values computed from such samples (e.g.-percentage of respondents indicating confusion) should **be viewed as rough indicators rather than precise quantitative estimates.**[7]

Thus, under Plaintiff's own authority, the value, if any, of a non-probability sample such as Gelb's, even under the best of conditions, is merely a "rough indicator." The Gelb respondents were not randomly selected (Motion at 7) nor were they part of the relevant population. Moreover, no special precautions were taken to reduce the likelihood of biased samples other than to rotate the order of questions. Plaintiff does not cite any case law or discussion of the application of *Daubert* or Fed.R.Civ.Evid. 702 to support the contention that *Daubert* poses no challenge to this type of non probability survey. (Response at 11). In short, Plaintiff has taken no pains to justify that the Gelb survey is a "well-conducted non-probability survey" (Response at 10) other than his word.[8]

### 3. Survey Question Format (Reply to Response at pgs. 11-15)

Plaintiff maintains that the question format in *Tour 18* absolves the Gelb survey from criticism that the questions are leading and ambiguous. (Response at 11-13) But the *Tour 18* survey question was **"followed by a 'control' question designed to assess guessing or 'noise.'"**[9] As a result the court found that "the survey properly accounted to the possibility that

---

[7] See Response: Exh. A at 224. (emphasis added).
[8] *See Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998), cert. denied 526 U.S. 1064 (burden falls on the proponent of the expert to show the testimony is relevant and reliable).
[9] *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F.Supp.1513, 1550 n.34 (S.D.Tex.1996)(emphasis added); *see also, KIS, S.A. Foto Fantasy, Inc.*, 204 F. Supp. 2d 968, 973-74 (N.D. Tex. 2001) (use of control group negated any real effect the form of the questions had on respondents).

-3-

3447022v1

the questions were leading." *Id*. But here Gelb did not use a control because there was "[n]o need for any control." Motion at 15: Gelb Dep. at 145:145:12-14; 147:13-15).

Plaintiff's attempt to distinguish the Donkey Kong questions[10] by stating that reason the court rejected the question as unfair is misleading (See Response at 16). The Second Circuit held and plainly stated that the subject question "was an obviously leading question in that it suggested its own answer" because "The participants were presented with the Donkey-Kong-King Kong connection rather than permitted to make their own connections."[11]

Here, too, the Gelb questions present the respondents with the connection rather than permitting them to make their own connections. Question No. 7 connects the "program" to the "movie advertised" and further connects the "Hollywood version" to the "actual pilot's real life story." Likewise, Question 9 connects "the program," "the actual pilot" and "the movie advertised on the program." "A survey is not credible if it relies on leading questions that are inherently suggestive and invite guessing by those who did not get any clear message at all."[12]

4. **Use Of The Word "Endorse" (Reply to Response at pgs 20-22)**. Regarding use of the word "endorse," the Response proves Defendants' point by admitting the ambiguity of the word and its wide range of meanings. Use of ambiguous language is not acceptable. In *Pebble Beach v. Tour 18*,[13] for example, the Court noted that the word "approval is a word with an easily understood everyday meaning ... We do not hold here that the unfettered use of 'permission,' rather than 'approval' **or other less ambiguous language is always acceptable...**" Here the ambiguity and confusion is evident in the responses to the questions

---

[10] *Universal Studios, Inc. v, Nintendo Co.*, 746 F.2d 112 (2d Cir. 1984).
[11] *Id.* at 118; see also Exhibit B to Plaintiff's Response: McCarthy on Trademarks § 32:175 at page 32-288 citing the Donkey Kong question as impermissibly leading.
[12] *Johnson & Johnson-Merck v. Rhone-Poulec Rorer*, 19 F.3d 125, 134-35 (3rd Cir.1984)(affirming district court's rejection of survey evidence it found "not objective because they asked very leading questions.")
[13] 155 F.3d 526, 544 n. 10 (5th Cir. 1998).

-4-

and it is compounded because Gelb did nothing to control the "noise' or confusion.[14] Moreover, all the responses were tabulated regardless of the confusion apparent in the answers to the "follow-up" questions. (See Motion at 17).

5. **The Fifth Circuit Has Rejected Flawed Survey Evidence (Reply to Response at 24-25).** Plaintiff repeatedly states the mantra that Defendants' challenges to the Gelb survey go to its weight not its admissibility. For example, Plaintiff cites *KIS, S.A. v. Foto Fantasy, Inc.*,[15] for the proposition: but there the court found the survey used an adequate universe, and the questions were not improperly leading. Indeed, the court in *KIS* noted that the claimed defects in that survey universe "are nothing like the **flagrant methodological errors** that inhered in the *Amstar* poll." Plaintiff cites no cases where a court admitted a survey that suffered from the multitude of flaws affecting the Gelb survey.

The Fifth Circuit opinion in *Amstar*[16] is authority enough for this Court to reject Gelb's survey which, as Defendants have shown, contains gross flagrant methodological errors (not just as to the universe tested but leading, suggestive questions and no control group). This result is compelled by *Daubert* and Fed.R.Civ.Evid. 702.

---

[14] *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F.Supp.1513, 1550 n.34 (S.D.Tex.1996)(emphasis added); *see also, KIS, S.A. Foto Fantasy, Inc.*, 204 F. Supp. 2d 968, 973-74 (N.D. Tex. 2001) (use of control group negated any real effect the form of the questions had on respondents).
[15] 204 F. Supp. 2d 968, 972 (N.D. Tex. 2001).
[16] *Amstar v. Domino's Pizza*, 615 F.2d 252, 264 (5th Cir. 1980).

Respectfully submitted,

JACKSON WALKER L.L.P.

By: /s/ Charles L. Babcock
Charles L. Babcock
State Bar No. 01479500
Nancy W. Hamilton
State Bar No. 11587925
Cedric D. Scott
State Bar No. 24013474
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4200
(713) 752-4221 – Fax

George L. McWilliams
PATTON, HALTOM, ROBERTS,
   MCWILLIAMS, & GREER, LLP
2900 St. Michael Drive, 4th Floor
Texarkana, Texas 75503
(903) 334-7000
(903) 334-7007 – Fax

**ATTORNEYS FOR DEFENDANT TWENTIETH CENTURY FOX FILM CORPORATION**

3447022v1

## CERTIFICATE OF SERVICE

This is to certify that on this 2d day of October, 2003, a true and correct copy of the foregoing Defendant Twentieth Century Fox Film Corporation's Reply to Plaintiff Scott O'Grady's Response In Opposition to Motion to Exclude Gabriel Gelb was served via United States Mail, postage prepaid, upon:

George E. Bowles
Locke, Liddell & Sapp. L.L.P.
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201

G. William Lavender
Lavender Law
Landmark Building
210 N. State Line, Suite 503
Texarkana, Texas 71854

Laura R. Handman
Davis Wright Tremaine L.L.P.
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272

Victor Hlavinka
Atchley, Russell, Waldrop & Hlavinka
P.O. Box 5517
Texarkana, TX 75505-5517

_____
Charles L. Babcock

3447022v1