IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| SCOTT O'GRADY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 502CV173 |
| | § | |
| TWENTIETH CENTURY FOX | § | JURY DEMANDED |
| FILM CORPORATION, and | § | |
| DISCOVERY COMMUNICATIONS, | § | ORAL ARGUMENT REQUESTED |
| INC., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION IN LIMINE AND BRIEF IN SUPPORT THEREOF

Defendants Twentieth Century Fox Film Corporation ("Twentieth Century Fox") and Discovery Communications, Inc. ("Discovery") (collectively hereafter "Defendants") file this their Response to Plaintiff's Motion in Limine and Brief in Support Thereof as to the following:

1. <u>Response to Plaintiff's Motion in Limine No. 6 (Accounting principles relating to Fox's profits)</u>

Plaintiff seeks to exclude any testimony from Twentieth Century Fox based on accounting principles not in accordance with Generally Accepted Accounting Principles ("GAAP"). (Plaintiff Scott O'Grady's Motion in Limine and Brief in Support Thereof [the "Motion"] at 3) Plaintiff contends that such testimony should be barred because it would be irrelevant or, if relevant, would only possess limited probative value substantially outweighed by a tendency to confuse the issues, mislead the jury, and waste time. (*Id.*)

Plaintiff has not cited a single authority for the proposition that Twentieth Century Fox should be prohibited from introducing testimony relating to the profits for the movie *Behind Enemy Lines* (the "Movie") based on accounting principles not in accordance with GAAP.

-1-

Accordingly, this Court should deny the Motion to the extent it would prohibit Twentieth Century Fox from introducing evidence of its accounting for the Movie utilizing procedures other than under GAAP.

2.  Response to Plaintiff's Motion In Limine No. 7 (the Gelb Survey Tape)

Plaintiff seeks to bar any testimony alleging that the videotape used by his expert Gabriel Gelb in conducting the Gelb survey, was not a fair representation of the November 28th ReBroadcast of Discovery Channel's *Behind Enemy Lines: the Scott O'Grady Story*. (Motion at 3-4). According to Plaintiff, Defendants experts Blair and Johnson did not criticize the videotape nor did they find it to be an inappropriate stimulus for the purpose of the Gelb Survey. (Motion at 4).

The referenced testimony from the experts, however, is immaterial. The questions posed to these experts regarding the appropriate "stimulus" is vague, ambiguous and does not address the real issue here which is the plain fact that Plaintiff cannot authenticate the Gelb tape. See Fed. R. Evid. 901 and 402. The tape Gelb used in the survey was the third tape he received. (Exhibit "A" Gelb Depo. at 29:15-18). The tape, labeled "November 28th Combined Discovery Channel" (marked as Exhibit 328 at the Gelb deposition), is a combination of tapes provided by Plaintiff's counsel to Gelb. (Exhibit "A" Gelb Depo. at 31:8-15) Gelb described his acquisition of the tape as follows:

> Q.   Okay. Do you know the source of Exhibit 328?
>
> A.   Is that the third tape?
>
> Q.   Yes, that's the third tape.
>
> A.   I don't know where the beginning portion came from, except that it was given to me by Mr. Flynn.

-2-

> Q. Okay. And in fact, it's –the tape is labeled a combined – November 28th combined Discovery Channel?
>
> A. Yes, it is.
>
> Q. Okay. So it's a combination of tapes?
>
> A. I believe so.
>
> Q. And were you told that by Counsel?
>
> A. Yes.
>
> Q. Okay. And what were you told?
>
> A. That it was the original tape that I saw, plus they had gotten the front part of the program added to that tape.
>
> Q. And do you know who added that to the tape?
>
> A. No.
>
> Q. And do you know where it came from?
>
> A. No.

(Exhibit "A" Gelb Depo. at 31:3-23)

The tape used by Gelb in conducting his survey, therefore, was one cobbled or pieced together from tapes from different sources, the origin of which he does not know. Twentieth Century Fox therefore objects to the tape on the grounds of Rules 402, 403 and 901 of the Federal Rules of Evidence. Moreover, even if the tape is admitted into evidence, which it should not be, Twentieth Century Fox should not be precluded from challenging its admissibility or whether or not it is a "fair representation." *See, e.g., U.S. v. Jones,* 107 F.3d 1147, 1150 n.1 (6th Cir. 1997), *cert. denied,* 521 U.S. 1127 (decision of trial court to admit evidence does not bar challenging authentication before the jury). Accordingly, Plaintiff's attempt to avoid Twentieth Century Fox's challenge to the tape by way of this motion in limine should be denied.

3. <u>Response to Plaintiff's Motion In Limine No. 10 (Reference to the First Amendment)</u>

Plaintiff's Motion In Limine No. 10 seeks to bar Defendants from "discussing, referencing, or arguing the importance, scope, or impact of the First Amendment or that the works at issue in this case are protected by the First Amendment." (Motion at 5). Plaintiff claims that any such references would be irrelevant and prejudicial. *Id.*

Plaintiff's extraordinary request that Defendants be barred from discussing the First Amendment should be denied out of hand. Plaintiff does not cite any authority to support this request nor can any be found where, as here, Defendants have properly plead and briefed their defenses under the First Amendment. Moreover, there has been no finding by this Court that the First Amendment does not apply or that Defendants cannot try this case on the basis of this fundamental Constitutional defense. Accordingly, as there are no grounds or authority to support the Motion, it should be denied.

WHEREFORE, PREMISES CONSIDERED, Defendants request that this Court deny Plaintiff's Motions in Limine 6, 7 and 10.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: _____
Charles L. Babcock (Attorney-in-Charge)
State Bar No. 01479500
Nancy W. Hamilton
State Bar No. 11587925
Cedric D. Scott
State Bar No. 24013474
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4200
(713) 752-4221 – Fax

George L. McWilliams
PATTON, HALTOM, ROBERTS,
    MCWILLIAMS, & GREER, LLP
2900 St. Michael Drive, 4th Floor
Texarkana, Texas 75503
(903) 334-7000
(903) 334-7007 – Fax

**ATTORNEYS FOR DEFENDANT TWENTIETH CENTURY FOX FILM CORPORATION**

DAVIS WRIGHT TREMAINE L.L.P.

By: _____
Laura R. Handman (Attorney-in-Charge)
Constance M. Pendleton
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272
(202) 508-6600
(202) 508-6699 – Fax

Gary L. Bostwick
Davis Wright Tremaine L.L.P.
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017-2566
(213) 633-6800
(213) 633-6899 – Fax

Victor F. Hlavinka
ATCHLEY, RUSSELL,
WALDROP & HLAVINKA, L.L.P.
1710 Moores Lane
P.O. Box 5517
Texarkana, TX 75505-5517
(903) 792-8246
(903) 792-5801 – Fax

**ATTORNEYS FOR DEFENDANT
DISCOVERY COMMUNICATIONS, INC.**

3505320v4

## CERTIFICATE OF SERVICE

This is to certify that on this 30th day of December, 2003, a true and correct copy of the foregoing Defendants' Response to Plaintiff's Motion in Limine and Brief in Support was served via United States Mail, postage prepaid, upon:

George E. Bowles, Esq.
Locke, Liddell & Sapp. L.L.P.
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201

G. William Lavender, Esq.
Lavender Law
Landmark Building
210 N. State Line, Suite 503
Texarkana, Texas 71854

Laura R. Handman, Esq.
Davis Wright Tremaine L.L.P.
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272

Gary L. Bostwick, Esq.
Davis Wright Tremaine L.L.P.
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017-2566

Victor Hlavinka, Esq.
Atchley, Russell, Waldrop & Hlavinka, P.C.
P.O. Box 5517
Texarkana, TX 75505-5517

_____
Cedric D. Scott

# EXHIBIT A

Gabriel Gelb

June 19, 2003

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF TEXAS
 2                      TEXARKANA DIVISION
 3   SCOTT O'GRADY,              )
                                  )
 4              Plaintiff,        )
                                  )
 5   VS.                          )  CIVIL ACTION NO. 502CV173
                                  )
 6   TWENTIETH CENTURY FOX        )
     FILM CORPORATION, and        )
 7   DISCOVERY COMMUNICATIONS,    )
     INC.,                        )
 8                                )
                Defendants.       )
 9
10   *******************************************
                ORAL AND VIDEOTAPED DEPOSITION
11                   GABRIEL M. GELB
                      JUNE 19, 2003
12   *******************************************
13
14
15        ORAL AND VIDEOTAPED DEPOSITION of GABRIEL M.
16   GELB, produced as a witness at the instance of the
17   Defendant, Twentieth Century Fox Film Corporation, and
18   duly sworn, was taken in the above-styled and numbered
19   cause on the 19th day of June, 2003, from 9:15 a.m. to
20   4:53 p.m., before Rhonda K. Ashman, CSR, RPR, in and
21   for the State of Texas, reported by stenographic
22   means, at the offices of Locke, Liddell & Sapp, LLC,
23   2200 Ross Avenue, Suite 2200, Dallas, Texas, pursuant
24   to the Federal Rules of Civil Procedure and the
25   provisions stated on the record or attached hereto.
```

Gabriel Gelb                                                              June 19, 2003

Page 6

1    GABRIEL M. GELB,
2 having been first duly sworn, testified as follows:
3           EXAMINATION
4 BY MS. HAMILTON:
5    Q. Would you state your name for the record,
6 please.
7    A. Gabriel Michael Gelb.
8    Q. Mr. Gelb, you've been retained as an expert
9 in this case?
10    A. Yes, I have.
11    Q. And that is on behalf of the Plaintiff, Scott
12 O'Grady?
13    A. Yes.
14    Q. Let me hand you first what's previously been
15 marked as Exhibit Number 325, which is the notice of
16 deposition. And ask you if you've had an opportunity
17 to review that prior to today?
18    A. Yes, I have.
19    Q. Okay. And did you bring any documents with
20 you today?
21    A. No.
22    Q. Okay. Did you have an understanding
23 already -- communications with counsel regarding
24 production of documents relating to your work in this
25 case?

Page 7

1    A. Did I have an understanding?
2    Q. Did you have a discussion with counsel about
3 production of documents that you worked on or that
4 were part of your work in relation to this case?
5    A. Yes.
6    Q. And have you produced all those documents?
7    A. To the best of my knowledge.
8    Q. Okay. How many times have you testified
9 before in trial?
10    A. In trial, about 10 or 12.
11    Q. Okay. And tell me what your understanding is
12 of your duties in this lawsuit.
13    A. To conduct a survey to determine whether or
14 not certain allegations by Captain O'Grady were
15 supported by the relevant population or not.
16    Q. And what were those allegations that you were
17 determining were supported or not?
18    A. Whether or not, after seeing the Discovery
19 Channel program, the relevant population believed that
20 Captain O'Grady was endorsing the Twentieth Century
21 Fox film, Behind Enemy Lines, and whether or not they
22 thought that that film told his story.
23    Q. Have you ever been retained as an expert
24 regarding false advertising claims?
25    A. I think so, maybe once or twice before.

Page 8

1    Q. And what cases were those?
2    A. I don't -- I don't remember offhand.
3    Q. Okay. What about false endorsement, have you
4 ever been retained as an expert to testify on matters
5 of false endorsement?
6    A. No.
7    Q. What is your understanding of what the
8 relevant population was? I think that was the term
9 that you were using. What -- what is the relevant
10 population that you were studying?
11    A. In my mind, the relevant population were
12 people who had access to the Discovery Channel in the
13 time period that the disputed program was shown.
14    Q. And how did you arrive at that determination?
15    A. Just seemed logical to me.
16    Q. No other reason other than it just seemed
17 logical?
18    A. That's correct.
19    Q. And how did you determine who -- and what was
20 the time frame that you're talking about?
21    A. Well, the disputed program was shown on
22 November 28th, 2001. So we wanted people who had
23 access to the Discovery Channel during that time
24 period and also were still watching the Discovery
25 Channel recently.

Page 9

1    Q. And why was it relevant, if at all, that they
2 were still watching the Discovery Channel?
3    A. Just so that they would be familiar with the
4 channel and still had access to it.
5    Q. Was there anything else that you considered
6 other than you were looking for people who had access
7 to the Discovery Channel as part of the relevant
8 population for your study?
9    A. Well, there were certain qualifications that
10 we screened for among those people who had access to
11 the Discovery Channel.
12    Q. And how did -- well, first of all, what were
13 those qualifications?
14    A. Those qualifications were people who had not
15 taken part in a research survey in the past six months
16 and -- let's see, that -- who -- who were part of any
17 entertainment company or video store.
18    Q. Any other qualifications?
19    A. No.
20    Q. What was the import, if anything, about
21 having people who had not taken part in a survey in
22 the last six months or past six months?
23    A. Well, you generally don't want people who are
24 professional surveyors, people who have been taking a
25 lot of surveys. You try to get a little bit more of a

3 (Pages 6 to 9)

Gabriel Gelb

June 19, 2003

Page 26

1   A. Then I received another tape, which
2   apparently came from Discovery Channel.
3   Q. And why do you say it "apparently came from
4   Discovery Channel"?
5   A. Well, I think it might have said DCI on it.
6   Q. Okay. Let me hand you this tape and see
7   if there's any way --
8        MS. HAMILTON: Peter, also, I forgot to
9   ask. We need to have a -- I don't need it right this
10  minute. But if we could get a VCR.
11  Q. (BY MS. HAMILTON) Is that the tape that
12  you're referring to?
13  A. As I say, you have the advantage of me in
14  citing Bates numbers. That's --
15  Q. Okay.
16  A. -- or --
17  Q. Well, then I'll just wait until later and
18  we'll put it on the screen --
19  A. Okay.
20  Q. -- and then you can --
21  A. Great.
22  Q. -- tell me.
23  A. Okay.
24  Q. Would you hand it back to me?
25  A. (Witness complies.)

Page 27

1   Q. Thanks.
2       And at this point in time, other than
3   conferences with Counsel, you had looked at the
4   complaint and you had looked at the first tape that
5   was given to you that you said was sort of a truncated
6   beginning?
7   A. That's correct.
8   Q. Did you ask for any other materials?
9   A. No. I mean, I said, at that point, that we
10  did not have a tape that we could show.
11  Q. And you're referring to the first tape, that
12  truncated tape?
13  A. That's correct.
14  Q. And who did you have that conversation with?
15  A. Mr. Flynn.
16  Q. And what was the result of that conversation?
17  A. Well, he sent me this second tape and I had
18  the same reaction.
19  Q. And that's the tape that you referred to as
20  the DCI tape?
21  A. Yes.
22  Q. And why did you -- first of all, as to the
23  first tape, why couldn't -- why was it your opinion
24  that you couldn't show that tape?
25  A. It wasn't the complete program.

Page 28

1   Q. And why did you have the opinion that you
2   couldn't show the second tape that was provided to
3   you?
4   A. As I recall, it did not have nonmovie
5   commercials in it.
6   Q. So it was not a complete program either?
7   A. That's correct.
8   Q. Did there come a time -- what was provided to
9   you after that, if anything?
10  A. A new set of tapes.
11  Q. And describe those tapes for me. They
12  were -- there were more than one tape?
13  A. There were eight tapes.
14  Q. And were they eight different tapes, or were
15  they eight of the same tape?
16  A. Same tape.
17  Q. Okay. And did you view that tape?
18  A. Yes, I did.
19  Q. Okay. And what was your assessment of that
20  tape?
21  A. In what sense? There was com- --
22  Q. Did it meet the criteria?
23  A. It -- it was a complete tape. It was a
24  complete tape of the program.
25  Q. Let me hand you this tape. And again, we'll

Page 29

1   look at it, if you have to. Repre- -- represent to
2   you that that's my understanding of the tape that was
3   given to you by Counsel.
4   A. I believe --
5   Q. That was one of the eight that -- one of the
6   eight tapes?
7   A. I believe it is.
8   Q. Okay.
9        MS. HAMILTON: Let's go ahead and mark
10  that.
11       You know what, you better put it on the
12  tape itself in case it gets out of the box. That's
13  328.
14       (Exhibit Number 328 marked.)
15  Q. (BY MS. HAMILTON) And so what has been
16  marked as Exhibit 328 is the -- I guess it was the
17  third tape that you received from Counsel?
18  A. Yes.
19  Q. Okay. And you said that it met the criteria.
20  What was the criteria?
21  A. It seemed to be a complete tape with the
22  opening talking about the movie and then seguing into
23  the Discovery Channel Scott O'Grady program with
24  commercials for other entities interspersed in the
25  tape, as well as additional advertising material on

8 (Pages 26 to 29)

Esquire Deposition Services
Phone (214) 965-9200

703 McKinney Avenue, Suite 320
(800) 852-9737

Dallas, Texas 75202
Fax (214) 965-9205
7df0e8f3-7efb-498c-a4e9-c8e0b233278e

Gabriel Gelb

June 19, 2003

Page 30

1 the movie itself.
2    Q. And do you have an understanding of where
3 this tape came from?
4    A. Mr. Flynn.
5    Q. Okay. Do you know whether it was produced by
6 any of the parties or how did it -- you know, if you
7 say strike one on the first tape that you got that was
8 truncated, strike two on the second tape; the DCI tape
9 because it didn't have the movie commercials, and then
10 you go back, number three works, that -- that meets
11 your criteria. Do you know how -- what the origin was
12 of that tape?
13    A. I know the origin of part of it.
14    Q. Okay. And this is part of the tape which has
15 been marked Exhibit 328?
16    A. Is that the last tape?
17    Q. Yes.
18    A. It was my understanding that the last tape
19 included the material that was in the original tape
20 given to me.
21    Q. It included the material in the original
22 tape, but did it also include other material?
23    A. No. You asked me what was in that tape. I
24 said that what I know is that part of the tape was the
25 same as I originally saw in the first tape and --

Page 31

1 which I understand was made by one of Captain
2 O'Grady's friends.
3    Q. Okay. Do you know the source of Exhibit 328?
4    A. Is that the third tape?
5    Q. Yes, that's the third tape.
6    A. I don't know where the beginning portion came
7 from, except that it was given to me by Mr. Flynn.
8    Q. Okay. And in fact, it's -- the tape is
9 labeled a combined -- November 28th combined Discovery
10 Channel?
11    A. Yes, it is.
12    Q. Okay. So is it a combination of tapes?
13    A. I believe so.
14    Q. Okay. And were you told that by Counsel?
15    A. Yes.
16    Q. Okay. And what were you told?
17    A. That it was the original tape that I saw,
18 plus they had gotten the front part of the program
19 added to that tape.
20    Q. And do you know who added that to the tape?
21    A. No.
22    Q. And do you know where it came from?
23    A. No.
24    Q. Okay. But you were satisfied to take the
25 tape that they had provided you?

Page 32

1    A. Yes.
2    Q. Okay. You said it was important that the
3 tape be complete. What do you mean by "complete"?
4    A. I mean that the second tape apparently, as I
5 said before, did not have commercials in it for other
6 than the movie, so we did not have the localized
7 retail and other commercials inserted in that.
8    Q. Okay. And -- and why was it important to
9 have those other commercials included in the tape?
10    A. Because I wanted to show the respondents the
11 tape as close to the actual program as we can get.
12    Q. Okay. Did you make any efforts to locate
13 other copies of this -- of the tape of the program as
14 aired on December 28th -- I'm sorry, November 28th --
15    A. No.
16    Q. -- 2001?
17    A. No.
18    Q. So you made no independent effort to obtain
19 the tape from Dec- -- November 28th, 2001?
20    A. No.
21    Q. Okay. But it was important to you that you
22 show the participants the tape as aired on
23 November 28th, 2001; is that correct?
24    A. Yes.
25    Q. And why was it important?

Page 33

1    A. To me it was -- obviously, if you're testing
2 what the relevant population might take away from a
3 program, you'd want them to see the program that was
4 shown.
5    Q. Okay. When you say the relevant population
6 was taking away -- what they were taking away from the
7 program?
8    A. That's right.
9    Q. And again, in your mind, the relevant
10 population were just people who had access to the
11 Discovery Channel through cable television; is that
12 correct?
13    A. Yes.
14    Q. Did you consider the population of viewers of
15 the Discovery Channel on November 28th, 2001?
16    A. Would you repeat the question?
17    Q. Did you consider the population that was
18 watching the Discovery Channel on November 28th of
19 2001?
20    A. I thought about whether or not that would be
21 possible to find those people, but then I gave that up
22 as impractical.
23    Q. Did you consider the demographics of the
24 Discovery Channel of November 28th, 2001?
25    A. No.

9 (Pages 30 to 33)

Phone (214) 965-9200

703 McKinney Avenue, Suite 320
(800) 852-9737

Dallas, Texas 75202
Fax (214) 965-9205
7df0e8f3-7efb-498c-a4e9-c8e0b233278e

Gabriel Gelb

June 19, 2003

Page 230

1  I, GABRIEL M. GELB, have read the foregoing
2  deposition and hereby affix my signature that same is
3  true and correct, except as noted above.
4
5  _____
       GABRIEL M. GELB
6
7  STATE OF _____ )
8  COUNTY OF _____ )
9
10  Before me, _____, on this
11  day personally appeared GABRIEL M. GELB, known to me
12  (or proved to me under oath or through
13  _____) to be the person whose name is
14  subscribed to the foregoing instrument and
15  acknowledged to me that they executed the same for the
16  purpose and consideration therein expressed.
17  Given under my hand and seal of office this
18  _____ day of _____, 2003.
19
20
       NOTARY PUBLIC IN AND FOR
21     THE STATE OF _____
22
23
24
25

Page 231

1  STATE OF TEXAS )
2
3  I, Rhonda K. Ashman, Certified Shorthand Reporter
4  in and for the State of Texas, do hereby certify that,
5  pursuant to the agreement hereinbefore set forth,
6  there came before me on the 19th day of June, A.D.,
7  2003 at 9:15 a.m., at Locke, Liddell & Sapp, in the
8  City of Dallas, County of Dallas, and State of Texas,
9  the following named person to-wit: Gabriel M. Gelb,
10  who was by me duly sworn to testify the truth and
11  nothing but the truth of his knowledge touching and
12  concerning the matters in controversy in this cause;
13  and that he was thereupon carefully examined upon his
14  oath and his examination reduced to writing under my
15  supervision; that the deposition is a true record of
16  the testimony given by the witness, same to be sworn
17  to and subscribed by said witness before any Notary
18  Public, pursuant to the agreement of the parties.
19  I further certify that I am neither attorney or
20  counsel for, nor related to or employed by, any of the
21  parties to the action in which this deposition is
22  taken, and further that I am not a relative or
23  employee of any attorney or counsel by the parties
24  hereto, or financially interested in the action.
25  I further certify that before the completion of

Page 232

1  the deposition, the Deponent _____, and/or the
2  Plaintiff/Defendant _____ did _____ did not _____
3  request to review the transcript.
4  Certified to by me this _____ day of
5  _____, 2003.
6
7
8
9
10  RHONDA K. ASHMAN, Texas CSR 5259
11  Expiration Date: 12-31-03
       ESQUIRE DEPOSITION SERVICES
12  703 McKinney Avenue
       Suite 320
13  Dallas, Texas 75202
       (800) 852-9737
14
15
16
17
18
19
20
21
22
23
24
25

Page 233

1  COURT REPORTER DISCLOSURE STATEMENT
2  X  Please be advised that pursuant to Rule IV.B4 of
      the standards and rules for certification of Certified
3  Shorthand Reporters as promulgated by the Supreme
      Court of Texas with regards to disclosure, I have no
4  existing or past financial, business, professional,
      family or social relationships with any of the parties
5  or their attorneys which to some might reasonably
      create an appearance of partiality.
6
      _____ Please be advised that Esquire Deposition
7  Services has entered into a volume-related discount
      fee structure with a party in this lawsuit; and that
8  if such discount is in effect, all parties in this
      case will receive the same discount for any like
9  product and/or service.
10  _____ Please be advised that there is an existing or
      past financial, business, professional, family or
11  social relationship with counsel involved in this
      case, separate and apart from counsel simply doing
12  business with Esquire Deposition Services (or related
      companies) in the past.
13  This relationship is:
14  _____

   Court Reporter: Rhonda K. Ashman, CSR, RPR
15  CSR Number: 5259
      Date: June 19, 2003
16
17
       Rhonda K. Ashman, CSR, RPR
18
19  CERTIFICATE OF SERVICE
20  This is to certify that a true and correct copy of the
      foregoing disclosure statement has been presented to
21  all counsel present at the deposition, and a copy of
      same will be attached to all transcript copies.
22
23
      Rhonda K. Ashman, CSR, RPR
24
25

59 (Pages 230 to 233)

Esquire Deposition Services
Phone (214) 965-9200

703 McKinney Avenue, Suite 320
(800) 852-9737

Dallas, Texas 75202
Fax (214) 965-9205
7df0e8f3-7efb-498c-a4e9-c8e0b233278e

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| SCOTT O'GRADY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 502CV173 |
| TWENTIETH CENTURY FOX | § | JURY DEMANDED |
| FILM CORPORATION, and | § | |
| DISCOVERY COMMUNICATIONS, | § | ORAL ARGUMENT REQUESTED |
| INC., | § | |
| | § | |
| Defendants. | § | |

## ORDER RULING ON PLAINTIFF'S MOTION IN LIMINE

Before the Court is Plaintiff's Motion in Limine and Brief in Support. Having considered the Motion, Defendants Twentieth Century Fox Film Corporation and Discovery Communications, Inc.'s Response to Plaintiff's Motion in Limine and Brief in Support, and the arguments of counsel, the Court hereby rules on Plaintiff's Motion in Limine as follows:

| | Granted | Denied |
|---|---|---|
| Plaintiff's Motion In Limine No. 6: Any testimony regarding Fox's profits that is not based on Generally Accepted Accounting Principles. | | |
| Plaintiff's Motion In Limine No. 7: Any testimony alleging that the videotape shown as a stimulus to the participants of the Gelb Survey was not a fair representation of the November 28th Rebroadcast of *Behind Enemy Lines: the Scott O'Grady Story*. | | |
| Plaintiff's Motion In Limine No. 10: Any reference to the First Amendment to the United States Constitution. | | |

SIGNED this _____ day of _____.

_____
UNITED STATES DISTRICT JUDGE

-1-