

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| SCOTT O'GRADY, | § | |
| | § | CIVIL ACTION NO. 5:02CV173 |
| Plaintiff, | § | |
| | § | |
| v. | § | "JURY" |
| | § | |
| TWENTIETH CENTURY FOX FILM CORP. | § | |
| and DISCOVERY COMMUNICATIONS, INC., | § | JUDGE DAVID FOLSOM |
| | § | |
| Defendants. | § | |

## PLAINTIFF SCOTT O'GRADY'S RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE AND BRIEF IN SUPPORT

Plaintiff Scott O'Grady ("O'Grady") files this Response to Defendants' Motions in Limine and Brief in Support, and requests that the Court deny the following motions in limine before jury selection and opening statements. This Response should not be interpreted as O'Grady's agreement with any of the other issues raised by Defendants' Motions in Limine. Instead, O'Grady believes that the remaining issues raised by Defendants' Motions in Limine are ones that may be addressed at the appropriate time during trial.

### Motion in Limine No. 1:  Exclusion of Damages

Defendants are not entitled to an order preventing O'Grady from offering evidence regarding the damages he seeks. Defendants' contention that O'Grady failed to produce sufficient information for Defendants to prepare for trial is completely disingenuous. In his Amended Initial Disclosures, O'Grady explained that he is seeking the following damages:

> Scott O'Grady is seeking to recover actual damages under Texas law for Defendants' violation of his exclusive right to commercially exploit his name, likeness, and identity. O'Grady's actual damages include, but are not limited to, reasonable compensation for the value of his name, likeness, or identity; the diminished value and capacity of O'Grady's name, likeness, and



**PLAINTIFF SCOTT O'GRADY'S RESPONSE TO DEFENDANTS'**
**MOTION IN LIMINE AND BRIEF IN SUPPORT – PAGE 1**
68326:83360 : DALLAS : 1236933.1

identity due to Defendants' unlawful use; damages to compensate O'Grady for the humiliation, embarrassment, frustration, and general mental anguish O'Grady has suffered and will continue to suffer due to Defendants' conduct; compensation for O'Grady's lost business opportunities; and compensation equal to the amount that Defendants have been unjustly enrichment by using O'Grady's name, likeness, or identity. O'Grady refers Defendants to the Expert Report of Mark Roesler dated May 15, 2003 for a statement of the value / reasonable compensation for the use of O'Grady's name, likeness, or image. Damages for O'Grady's humiliation, embarrassment, frustration, and general mental anguish are to be determined by the jury. O'Grady also seeks an award of exemplary damages in the maximum amount allowed by the Court.

Scott O'Grady also seeks recovery of damages under 15 U.S.C. § 1117(a) including without limitation: (1) Defendants' profits; (2) all actual damages sustained by O'Grady; (3) treble damages, on the grounds that Defendants' acts have been intentional, willful and wanton; (4) the costs of this suit; and (5) reasonable attorneys' fees. O'Grady refers Defendants to the Expert Report of Phil Hacker dated May 21, 2003, for a statement of the profits earned by Fox for which O'Grady is seeking recovery. O'Grady also seeks recovery of $400,000 from DCI, reflecting the value of the payments DCI demanded in return for promoting Fox's *Behind Enemy Lines* on the November 28 Rebroadcast using O'Grady. O'Grady refers Defendants to the Expert Report of Mark Roesler dated May 15, 2003, for a statement of the value of Defendants' use of O'Grady to endorse Fox's film. Due to Defendants' intentional, willful, and wanton conduct, O'Grady's recovery of damages and profits from Defendants should be trebled.

In addition to the above, O'Grady also seeks recovery of pre- and post-judgment interest as well as all other damages to which he is entitled in law or in equity.

This disclosure specifically refers Defendants to the expert reports explaining how to calculate the damages O'Grady seeks to recover due to Defendants' use of O'Grady's name, likeness, image, and endorsement. This disclosure also refers Defendants to the expert reports explaining the calculation of the profits O'Grady seeks to recover. Defendants have had a full and fair opportunity to conduct discovery regarding those expert opinions. O'Grady had no obligation to

amend his Interrogatory answers to include that information because O'Grady lacks personal knowledge regarding the fair market value of the Defendants' use of his name, likeness, image, and endorsement, and he lacks personal knowledge regarding Defendants' profits. Accordingly, O'Grady could not testify under oath regarding those values—that is the proper subject of O'Grady's expert witness testimony.

Furthermore, O'Grady had no obligation to provide the Defendants with any additional information regarding the computation of his claimed damages for mental anguish, exemplary damages, and punitive damages. The elements and criteria to be considered when formulating an exemplary or punitive damages award are established by law. *See* TEX. CIV. PRAC. & REM. CODE § 41.011. The computation of such damages is entrusted to the jury, and is not subject to measurement under an exact formula. Defendants have had a full opportunity to examine O'Grady regarding the impact of their actions upon him for purposes of analyzing O'Grady's request for mental anguish. Moreover, Defendants have had a full opportunity to conduct discovery regarding the severity of their own unlawful conduct giving rise to exemplary and punitive damages. There is no merit to Defendants' contention that they have been harmed in their ability to prepare for trial.

**Motion in Limine No. 2:   Documentary v. Docu-Drama**

Throughout this case, Defendants have attempted to twist O'Grady's claims and to use word games to serve their cause. This Court should reject Defendants' latest attempt to choose for O'Grady the words that he may use to describe the November 28 broadcast of *Behind Enemy Lines: the Scott O'Grady Story*. Defendants dedicate two pages to try to explain how the November 28 broadcast is a "documentary" and not a "docu-drama" based upon the alleged accuracy of the broadcast. Even under Defendants' definition, however, the November 28

broadcast is a docu-drama because it contains actors reenacting scenes relating to O'Grady and his rescue.[1] That program is not, as Defendants contend, entirely factual. Indeed, given that this entire case focuses upon Defendants' use of that program to promote a work of fiction, there is at least a factual question regarding whether the November 28 broadcast delivers an accurate message to viewers. The parties should be free to describe the November 28 broadcast as either a "docu-drama" or a "documentary", as they deem necessary in the presentation of their case.

## Motion in Limine No. 3:  October 1993 Letter Agreement

The Court should also reject Defendants' attempt to limit the use of the October 1993 Letter Agreement when defining the scope of Discovery's rights to use O'Grady based upon the agreement O'Grady allegedly entered into with the BBC. There is a factual dispute regarding the nature and scope of the release agreement that Defendants believe O'Grady signed with the BBC.[2] But, even if O'Grady signed a release with the BBC, the October 1993 Letter Agreement between the BBC and Discovery is a relevant and necessary piece of evidence to this case. That October 1993 Letter Agreement is one of the contracts that governs the rights Discovery acquired from the BBC.

Importantly, Defendants bear the burden to prove that O'Grady consented to their use of O'Grady in the November 28 broadcast of *Behind Enemy Lines: the Scott O'Grady Story* to promote Fox's movie, *Behind Enemy Lines. See Stone Resources, Inc. v. Barnett*, 661 S.W.2d 148, 151 (Tex. App.—Houston 1983, no writ). O'Grady did not sign any release agreements

---

[1] Tellingly, in her Report and Recommendation on Defendants' Motions for Summary Judgment, Magistrate Judge Craven also refers to the November 28 broadcast of *Behind Enemy Lines: the Scott O'Grady Story* as a "docu-drama". *See* Report and Recommendation of the United States Magistrate Judge dated December 19, 2003 at page 2.

[2] O'Grady believes that Defendants' consent argument is substantively without merit, for his consent was not broad enough to cover the November 28th Rebroadcast. But without the October 1993 Letter Agreement as a link in the chain of documents granting Discovery the right to show the program, Defendants cannot prove the extent of their rights acquired from the BBC.

with Defendants, however. Defendants did not even contact O'Grady regarding his participation in the November 28 broadcast. Accordingly, if Defendants claim any rights through the alleged BBC release, Defendants must establish their rights in that Agreement.

The October 1993 Letter Agreement is a key piece of the chain of Defendants' rights, if any, in the BBC release. Without that Agreement, O'Grady will be entitled to a directed verdict on Defendants' consent defense because Defendants will have failed to prove as a matter of law that they have the right to assert the BBC's rights under the release against O'Grady. If Defendants use that Agreement to try to establish their rights in the BBC release, the entire agreement and its terms are admissible to the jury. Indeed, Defendants cannot possibly contend that they are able to claim rights in part through the terms of the October 1993 Letter Agreement while simultaneously arguing that they should not be subject to the express condition placed upon their rights under the agreement, which prohibits Discovery from using the BBC programs "so as to constitute an endorsement of any other product or service."

Defendants' assertion that the October 1993 Letter Agreement's position in the chain of licenses is not in dispute misstates the stipulation agreed to by the parties in the Joint Final Pre-Trial Order by omitting the limitations placed upon that stipulation. The relevant stipulation reads as follows:

> Defendant Discovery Communications, Inc. ("Discovery") entered into a series of agreements with the BBC to obtain a license to air the BBC documentary in the United States. Discovery's rights in that documentary are governed by the terms of the agreements between Discovery and the BBC.

(Stipulations and Uncontested Facts, Joint Pretrial Order, ¶ 14). That stipulation simply states that "Discovery's rights in that documentary *are governed by the terms of the agreements*", including the October 1993 Letter Agreement. Defendants must still prove the terms of those agreements if they wish to make arguments based on the rights they acquired through the

**PLAINTIFF SCOTT O'GRADY'S RESPONSE TO DEFENDANTS'**
**MOTION IN LIMINE AND BRIEF IN SUPPORT – PAGE 5**

agreements. Without the October 1993 Letter Agreement, Defendants cannot prove that they had the BBC's rights to the documentary, including the right to rely upon O'Grady's alleged release related to the BBC program.

## Motion in Limine No. 4:  Friends of Plaintiff

The testimony of O'Grady's "friends" is relevant and admissible at trial. Mr. Byers, Mr. Flanagan, and Mr. & Mrs. Nielson are actual viewers of the November 28 broadcast of *Behind Enemy Lines: the Scott O'Grady Story*. They are fully qualified to testify to the jury about what they saw, and how they reacted to that program. *See* FED. R. EVID. 602. Defendants' assertion that these viewers' reaction to the program are somehow not relevant is nonsensical. The true complaint that Defendants have with the testimony of these four witnesses is that Defendants do not agree with the substance of their testimony.

Defendants had a full and fair opportunity to conduct discovery regarding Mr. Byers, Mr. Flanagan, and Mr. & Mrs. Nielson's testimony. Defendants insisted upon traveling to Washington state to take these witnesses depositions. Indeed, the vast majority of the deposition excerpts O'Grady intends to play at trial are the testimony given in response to Defendants' questioning of these witnesses. As evidenced by the testimony Defendants' cite, Defendants were able to obtain the testimony they believe to be necessary to impeach these witnesses at trial.

Defendants' motion in limine is not the appropriate mechanism to weigh the probative value of these four witnesses' testimony. Instead, it is for the jury to hear the testimony to evaluate for themselves whether the testimony offered by O'Grady's friends is probative of the issues at trial. Indeed, at present, the Court does not even have the full evidence necessary to evaluate the factual assertions being made by Defendants. For example, contrary to Defendants' representations to the Court, O'Grady did not bias or prejudice these witnesses by expressing his

views regarding the November 28 broadcast of *Behind Enemy Lines: the Scott O'Grady Story* before they saw the program. Instead, the evidence has shown that O'Grady did not see the program on November 28; he called his "friends" in Washington to tape the program so that he would have an opportunity to view the program for himself to form his opinions regarding that program that was aired without his knowledge or consent.

The jury should be allowed to hear the testimony of these actual viewers of the November 28 broadcast.

### Motion in Limine No. 5: Plaintiff's Experts Who Have Failed to Comply with Rule 26

The opinions and testimony of O'Grady's expert witnesses has been disclosed in their reports, through depositions, and as required by Rule 26. Their testimony is admissible.

O'Grady opposes Defendants' attempt to limit Mr. Hacker's testimony. Rather than attempt to explain what Mr. Hacker should be precluded from saying, Defendants attempt to re-write Mr. Hacker's report and deposition to focus upon what Defendants would like Mr. Hacker to address. O'Grady submits that Mr. Hacker should be allowed to testify regarding any matter fairly raised in Mr. Hacker's report and deposition testimony, including the topics of the principles, assumption, and data that may properly be relied upon by an expert in his field.

Defendants' attack against Mr. Roesler's testimony is equally unfounded, and is nothing more than a disguised attempt to reargue their *Daubert* challenge against Mr. Roesler as a motion in limine. O'Grady expressly adopts his Opposition to Defendants' Joint Motion to Exclude Testimony by Expert Witness Mark A. Roesler as if set forth herein. As explained more fully in that opposition, Defendants' attempt to limit Mr. Roesler's ability to testify about the value of O'Grady's endorsement is unfounded, and is based upon a selective citation of Mr. Roesler's testimony. During that deposition, Mr. Roesler explained that he was providing testimony

regarding the value of Defendants' use of O'Grady's name, likeness, and image to promote the movie. Mr. Roesler also testified about the value that a major motion picture company would have to pay to publicize and associate O'Grady with a fictionalized film that is loosely based upon his experiences. Accordingly, there is no basis for the Court to limit Mr. Roesler's testimony regarding the issue of endorsements.[3]

## Motion in Limine No. 6:   Exclusion of Testimony re: Value of O'Grady's Life Rights

Defendants' request to exclude evidence regarding the value of O'Grady's right to make a movie based upon his life story misses the significance of that evidence. O'Grady does not challenge Defendants' right to make a fictional movie based upon O'Grady. Nevertheless, as explained by Mr. Roesler, if Defendants wish to have O'Grady promote or endorse that movie (as they did by producing the November 28 broadcast of *Behind Enemy Lines:   the Scott O'Grady Story*), they must compensate O'Grady for the fair market value of his participation in the promotion of that broadcast. Once O'Grady participates in the promotion of a work based upon his story, O'Grady no longer has the ability to promote competing works. Thus, O'Grady would no longer be able to obtain payment for the value of his "life rights" to make a movie.

To compute the fair market value of O'Grady's participation in the promotion of Defendants' work, the jury must consider the value of the rights, including his life rights, that O'Grady would be giving up had he chosen to participate in the promotion of Defendants' work. Accordingly, this Court should deny Defendants' motion and limine and should not exclude testimony regarding the value of Defendants' life rights.

---

[3] O'Grady does not intend to offer Mr. Roesler to testify about whether Defendants' actions had an actual negative impact on O'Grady's speaking fees and the sale of his books. Instead, Mr. Roesler's testimony regarding those fees and book sales is limited to expressing his opinion that the potential negative impact upon speaking fees and the sale of his books is a factor that may be considered when determining the value of using O'Grady to promote a fictionalized movie that is not his story.

**Motion in Limine No. 7:   Exclusion of Testimony Regarding Injury to Reputation and Mental Anguish from Alleged False Light Portrayal of O'Grady in the Fox Movie**

This Court should deny Defendants' Motion in Limine No. 7.  O'Grady has not asserted a claim for any alleged "false light" presentation of O'Grady in *Behind Enemy Lines*.  Instead, O'Grady's evidence regarding the portrayal of the lead character in *Behind Enemy Lines* is relevant to the computation of the fair market value of O'Grady's participation in the promotion of that movie.  The Defendants' promotion of *Behind Enemy Lines* has confused the public into believing that the movie is Scott O'Grady's Story.  Naturally, to determine the value of O'Grady's participation in the story (*i.e.* what it would cost in a fair market negotiation for his participation), the jury must consider the manner in which O'Grady must be portrayed in the public's eyes.  Here, the Defendants' have used O'Grady to promote a work about a "hot shot" pilot who disobeys orders.  It is only logical that O'Grady would be entitled to a premium in a fair market negotiation regarding the value of his promotion of the work, due to the presentation of the lead character (whom the public may perceive as O'Grady) in such an unflattering and inaccurate light.

**Motion in Limine No. 8:  Unrelated and Dissimilar Occurrences**

O'Grady does not oppose Defendants' request to exclude evidence regarding other unrelated or dissimilar occurrences on the condition that Defendants may not offer such other or dissimilar occurrences to try to avoid liability in this case.  Specifically, Discovery has suggested that it produces "stunt nights" for movies on a regular basis, including to promote *Ice Age*, *Planet of the Apes*, etc.  In granting this motion in limine, the Court should also preclude Defendants from offering such other evidence to suggest that their actions are permissible.

**Motion in Limine No. 16:  Unidentified Persons with Knowledge of Relevant Facts**

O'Grady agrees with Defendants that the parties should not be allowed to call any

witnesses who were not timely disclosed before the Court's discovery cut-off date. All of the witnesses on O'Grady's witness list were timely disclosed. For the Defendants, however, several of their witnesses were not identified in a timely manner, before the fact witness discovery cutoff date of July 25, 2003. For example, Fox has listed Colonel David L. Goldfein on its trial witness list, but Col. Goldfein was not disclosed by Fox until December 5, 2003, long after the conclusion of the discovery period.[4] Similarly, Discovery has listed Daniel Stanton, a Discovery employee, on its witness list, but Mr. Stanton was not disclosed by Discovery until December 1, 2003, long after the conclusion of the discovery period.[5] Accordingly, O'Grady requests that the Court grant Defendants' motion in limine against all of the parties and preclude Defendants from calling any witnesses not timely disclosed (such as Col. Goldfein and Mr. Stanton) at trial.

## Motion in Limine No. 19: Other Investigations, Stories or Broadcasts

O"Grady does not oppose Defendants' request to exclude evidence regarding other investigations, stories, or broadcasts by the Defendants on the condition that Defendants may not offer such other or dissimilar occurrences to try to avoid liability in this case. Specifically, Discovery has suggested that it produces "stunt nights" for movie on a regular basis, including to promote *Ice Age*, *Planet of the Apes*, etc. In granting this motion in limine, the Court should also preclude Defendants from offering such other evidence to suggest that their actions are permissible.

## Motion in Limine No. 26: Net Worth of the Defendants

This Court should also reject Defendants' attempt to limit evidence regarding

---

[4] Fox first identified Col. Goldfein as a possible witness in Fox's Third Amended Initial Disclosures and Third Supplemental Identification of Trial Witnesses that was served on December 5, 2003.

[5] Discovery first disclosed Mr. Stanton as a possible witness on December 1, 2003 in Discovery's Second Amended Rule 26(a) Initial Disclosures. Discovery first listed Mr. Stanton on its trial witness list in Discovery's Supplemental Identification of Trial Witnesses served on December 3, 2003.

Defendants' net worth and profits. Defendants' net worth is an element relevant to the amount of exemplary damages that O'Grady may recover under his misappropriation and unfair competition claims. *See* TEX. CIV. PRAC. & REM. CODE § 41.001(a)(6). Defendants' profits are an element of damages that O'Grady may recover under his Lanham Act claims. *See* 15 U.S.C. § 1117(a). Whether O'Grady is entitled to recover exemplary damages or Defendants' profits is something that the Court and the jury will not be able to determine until all of the evidence has been heard. Defendants have never requested a bifurcated trial on liability and damages. Accordingly, O'Grady is entitled to present evidence to establish the amount of damages he is entitled to recover (including exemplary damages and profits) during the trial of the case.

Notably, Defendants' attempt to preclude O'Grady from offering evidence regarding Defendants' profits until he has made a "clear and convincing" showing of "willfulness and bad faith" is legally erroneous. Defendants have not cited any authority that supports the use of a "clear and convincing" evidence standard when determining whether to award profits under the Lanham Act. Moreover, Defendants are wrong when they argue that a finding of "willfulness and bad faith" is a prerequisite to recovering profits in the Fifth Circuit. Instead, the Fifth Circuit requires analysis of the factors listed in *Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 528 (5th Cir. 1998) to determine whether to enter an award of profits. In *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 349-50 (5th Cir. 2002), the Fifth Circuit expressly held that it was error to condition an award of profits upon a finding of willfulness. The authorities Defendants cite to argue that willfulness and bad faith are prerequisites to recover are simply *not* the law in the Fifth Circuit.[6]

---

[6] Although Defendants cite *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 823-34 (5th Cir. 1998) in support of a willfulness requirement, that case does not actually impose such a requirement. Instead, it employs the *Pebble Beach* factors, and then notes that other courts impose different formulations of the standards for recovering profits.

Dated:  January 5, 2004

Respectfully submitted,

*W. Scott Hastings*

George E. Bowles
      State Bar No. 02743300
      Attorney in Charge
C. W.  Flynn
      State Bar No. 07196580
Roy W. Hardin
      State Bar No. 08968300
W. Scott Hastings
      State Bar No. 24002241
Stephen D. Wilson
      State Bar No. 24003187
LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue, Suite 2200
Dallas, TX  75201-6776
Telephone (214) 740-8000
Facsimile (214) 740-8800
gbowles@lockeliddell.com

G. William Lavender
      State Bar No. 11999590
Lavender Law Firm
P. O. Box 1938
Texarkana, Arkansas 75504
Telephone (870) 773-3187
Facsimile (870) 773-3181


ATTORNEYS FOR PLAINTIFF
SCOTT O'GRADY

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing "Plaintiff Scott O'Grady's Response to Defendants' Motion In Limine and Brief in Support" was served upon the following counsel of record, on this 5th day of January, 2004:

Charles L. Babcock
Nancy Hamilton
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, TX 77010

George L. McWilliams
Patton, Haltom, Roberts, McWilliams,
 & Greer, LLP
2900 St. Michael Drive, 4th Floor
Texarkana, Texas 75503

Laura R. Handman
Davis, Wright, Tremaine, L.L.P.
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272

Victor Hlavinka
Atchley, Russell, Waldrop & Hlavinka
P.O. Box 5517
Texarkana, TX 75503-5517

_W. Scott Hastings_
W. Scott Hastings